1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN ELLIS PORTER, | ) | CV F 03-6431  WMW HC |
| Petitioner, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | AND ORDER RE PETITION |
| | ) | FOR WRIT OF HABEAS |
| | ) | CORPUS AND |
| DERRAL ADAMS, WARDEN, | ) | RESPONDENT'S MOTION TO |
| | ) | DISMISS |
| Respondent. | ) | |
| | ) | [Doc. 60, 72] |
| _____ | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas
corpus pursuant to 28 U.S.C. § 2254.  Pursuant to Title 28 U.S.C. § 636(c)(1), the parties
have consented to the jurisdiction of the United States Magistrate Judge.

PROCEDURAL HISTORY

On July 18, 2000, following a jury trial in Kern County Superior Court, judgment was
entered against Petitioner.  Petitioner was convicted of kidnaping to commit extortion with

bodily harm or death (Penal Code[1] Section 209(a), count one); kidnaping for robbery (Section 209(b)(1), count two), kidnaping for carjacking (Section 209.5(a), count three); carjacking (Section 251(a), count four); robbery (Section 212.5(c), count five); and extortion (Section 518, count six).  In connection with each count, Petitioner was found to have personally used a firearm in violation of sections 12022.5(a), and 120.22.53(b).  Petitioner was sentenced to life without possibility of parole for count one, life with possibility of parole for counts two and three (count two stayed pursuant to Section 654, count three to run concurrent to count one), three years on count five, and three years on count six (both stayed pursuant to Section 654.)  Count four was dismissed.

Petitioner filed a direct appeal from his conviction with the California Court of Appeal, Fifth Appellate District ("Court of Appeal").  In an unpublished opinion issued October 10 , 2002, the Court of Appeal affirmed the judgment in its entirety.  Petitioner filed a petition for review with the California Supreme Court, which denied the petition on January 15, 2003.

On October 15, 2003, Petitioner filed his original petition in the present habeas corpus proceeding, alleging three claims.  Petitioner alleged as follows: 1) the trial court erred in denying a motion to exclude Petitioner's confession; 2) the trial court erred in admitting Petitioner's codefendant's redacted confession; and 3) there was insufficient evidence presented to support the finding that the victim suffered bodily injury or was confined in a manner which exposed her to substantial likelihood of death.  Respondent filed an answer to the original petition on February 8, 2004.

On August 3, 2006, Petitioner filed his amended petition, realleging his original three claims as grounds one, two and seven, and asserting six newly exhausted claims.  The newly exhausted claims are as follows: (3) Section 209, the California aggravated kidnaping law, is

---

[1]Unless otherwise indicated, all further Section references are to the California Penal Code.

2

unconstitutionally vague, on its face and as applied, in violation of the Fourteenth

Amendment's due process clause; (4) Petitioner is actually innocent of the crimes for which

he is convicted and imprisoned in violation of the United States Constitution; (5) Section

209, as applied to Petitioner, violated the United States and California constitutional bans on

cruel and unusual punishment; (6) the evidence was insufficient , under the federal

Constitution, to establish the crimes of extortion charged in counts one and six of the

charging information; (8) ineffective assistance of counsel in violation of the Sixth and

Fourteenth Amendments to the United States Constitution; (10) in effective assistance of

appellate counsel in violation of the Sixth and Fourteenth Amendments to the United States

Constitution.

Now pending before the court is Respondent's motion to dismiss the new claims

raised in the amended petition, as well as consideration of the merits of Petitioner's original

claims.

**LEGAL STANDARD**

JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody

pursuant to the judgment of a state court if the custody is in violation of the Constitution or

laws or treaties of the United States.  28 U.S.C. § 2254(a);  28 U.S.C. § 2241(c)(3);  Williams

v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000).  Petitioner asserts that he suffered violations of

his rights as guaranteed by the United States Constitution.  In addition, the conviction

challenged arises out of the Kern  County Superior Court, which is located within the

jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the court has

jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after

its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,*

1    522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997)

2    (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107,

3    117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117

4    S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

5    The instant petition was filed on October 15, 2003, after the enactment of the AEDPA, thus it

6    is governed by its provisions.

7    STANDARD OF REVIEW

8        This court may entertain a petition for writ of habeas corpus "in behalf of a person in

9    custody pursuant to the judgment of a State court only on the ground that he is in custody in

10   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

11       The AEDPA altered the standard of review that a federal habeas court must apply

12   with respect to a state prisoner's claim that was adjudicated on the merits in state court.

13   Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for

14   habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision

15   that was contrary to, or involved an unreasonable application of, clearly established Federal

16   law, as determined by the Supreme Court of the United States;" or "resulted in a decision

17   that was based on an unreasonable determination of the facts in light of the evidence

18   presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123

19   S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v.

20   Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

21   "A federal habeas court may not issue the writ simply because that court concludes in its

22   independent judgment that the relevant state-court decision applied clearly established

23   federal law erroneously or incorrectly." Lockyer, at 1174 (citations omitted). "Rather, that

24   application must be objectively unreasonable." Id. (citations omitted).

25       While habeas corpus relief is an important instrument to assure that individuals are

26   constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

27

28                                            4

(1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115 S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>, 110 F.3d 1380, 1388 (9th Cir. 1997).

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991);  <u>Rose v. Lundy</u>, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); <u>Buffalo v. Sunn</u>, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); <u>Johnson v. Zenon</u>, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); <u>Kenney v. Tamayo-Reyes</u>, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim.  <u>Duncan</u>, 513 U.S. at 365-66, 115 S.Ct. at 888; <u>Keating v. Hood</u>, 133 F.3d 1240, 1241 (9th Cir.1998).

When the California Supreme Court's opinion is summary in nature, however, this

Court "looks through" that decision and presumes it adopted the reasoning of the California

Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v.

Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)

(establishing, on habeas review, "look through" presumption that higher court agrees with

lower court's reasoning where former affirms latter without discussion); see also LaJoie v.

Thompson, 217 F.3d 663, 669 n. 7 (9ᵗʰ Cir.2000) (holding federal courts look to last reasoned

state court opinion in determining whether state court's rejection of petitioner's claims was

contrary to or an unreasonable application of federal law under § 2254(d)(1)).

### DISCUSSION

### Motion to Dismiss

On December 13, 2006, Respondent filed a motion to dismiss claims three through

six and eight through ten of the amended petition("the new claims") on the ground that the

claims are untimely in violation of 28 U.S.C. Section 2244(d).  Respondent argues that

Petitioner is not entitled to either statutory or equitable tolling, and that the new claims are

not entitled to relation back principles.  In response, on March 19, 2007, Petitioner filed three

documents.  In the first, an opposition to the motion to dismiss, Petitioner contends that he is

entitled to equitable and/or statutory tolling to present his newly exhausted claims.  In the

second, a second opposition to the motion to dismiss, Petitioner contends that even if the

court concludes that tolling or relationback is unwarranted, he is entitled to have his newly

exhausted claims heard under the actual innocence gateway established in  Schlup v. Delo,

513 U.S. 298 (1995).  The third document is a motion for discovery, evidentiary hearings,

depositions, and appointment of counsel and an investigator.

Discovery and  Statutory or Equitable Tolling

In support of that his motion for discovery, Petitioner relies on Rule 6(a), Rules

Governing Section 2254 Cases.  The rule provides in part that, "[a] judge may, for good

cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and

may limit the extent of discovery."   Petitioner seeks discovery regarding the Institute for Criminal Justice Research ("ICJR"), which he alleges represented him in connection with his state and federal habeas corpus petitions.

Petitioner admits that as Respondent claims, his newly exhausted claims are untimely under the one-year statute of limitations applicable to Section 2254 habeas petitions under the Antiterrorism and Effective Death Penalty Act of 1996.  Petitioner concedes, therefore, that he must establish entitlement to tolling in order to proceed on these claims.  Petitioner states that he seeks to conduct discovery to establish that entitlement.

The limitations period is subject to equitable tolling if "extraordinary circumstances beyond a prisoner's control" have made it impossible for the petition to be filed on time. Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), *citing* Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S. 814, 118 S.Ct. 60, 139 (1997); Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283,1288 (9th Cir.), *overruled in part on other grounds by*, Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (*en banc*) (noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time"). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir.1999), *citing* Kelly, 163 F.3d at 541; Beeler, 128 F.3d at 1288-1289.

In this case, Plaintiff seeks to conduct discovery with the goal of showing that (1) he was prevented from timely discovering and filing Constitutional claims when the ICJR misled him and failed to timely present new claims as promised and (2) the Attorney General's office was "complicit by inactivity" in ICJR's actions."   Thus, Petitioner proposes to show that either the IRJR  misleading him and providing incompetent representation and/or the Attorney General failing to investigate the IRJR, constituted extraordinary

circumstances beyond his control which prevented him from timely filing his now newly-exhausted claims. These extraordinary circumstances would then, Petitioner argues, support equitable tolling.

The court finds that neither the alleged incompetence of the ICJR nor the Attorney General's office's alleged inactivity in regard to investigating ICJR, even if true, would constitute extraordinary circumstances which would justify equitable tolling in this case. A non-capital habeas petitioner is only entitled to a reasonably adequate opportunity to present his claims to the courts, see, Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996), not to the assistance of someone trained in the law. Id. at 356, 360. Attorney negligence does not justify equitable tolling. Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000). Similarly, ignorance of the law also does not excuse prompt filing. Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000). In Miranda v. Castro, 292 F.3d 1063, 1066-67 (9th Cir. 2002), the Ninth Circuit explained as follows:

> We recently addressed the question whether an attorney's negligence in calculating the due date for a federal habeas petition, and concomitant late filing of such petition, meet this high threshold of "extraordinary circumstances" sufficient to warrant equitable tolling. See Frye v. Hickman, 273 F.3d 1144 (9th Cir.2001), cert. denied, 535 U.S. 1055, 122 S.Ct. 1913, 152 L.Ed.2d 823 (2002). We answered the question in the negative, "conclud[ing] that the miscalculation of the limitations period by ... counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling." Id. at 1146. FN4 Unless Miranda can somehow distinguish Frye, then, he is not entitled to equitable tolling.

> FN4. In so holding, we joined a host of other circuits which have arrived at the same conclusion. See, e.g., Smaldone v. Senkowski, 273 F.3d 133, 138-39 (2d Cir.2001) (finding "attorney error inadequate to create the 'extraordinary' circumstances equitable tolling requires"); Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.2001) ("In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."); Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000) ("[W]e cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that 'extraordinary circumstance' ... that would justify equitable tolling."); Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir.1999) (concluding that attorney's miscalculation of limitations period was not a valid basis for equitable tolling); Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir.2000) ("[C]ounsel's confusion about the applicable statute of limitations does not warrant equitable tolling."); Steed v. Head, 219 F.3d 1298, 1300 (11th Cir.2000) ("An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling.").

Under this substantial case law, ICJR's alleged erroneous advice to Petitioner is insufficient to justify equitable tolling. It follows that the Attorney General's alleged failure to investigate the ICJR is similarly insufficient. Accordingly, the court will decline to grant Petitioner equitable tolling on either of those grounds. Thus, the court finds discovery on these two issues to support a claim for equitable tolling is not justified.

Petitioner also contends that discovery is warranted to investigate "state action" which, he argues, would support statutory tolling under 28 U.S.C. § 2244(d)(1)(B). Section 2244(d) provides:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> 1. **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The state action Petitioner refers to is the alleged failure of the Attorney General's Office to act despite having received complaints about ICJR. Petitioner claims that the continued existence of ICJR indicates that the Attorney General has failed to take action against it. Petitioner speculates that the Attorney General has not acted in regard to ICJR because ICJR provides a benefit to the Attorney General by undermining or destroying collateral attacks on California state court criminal convictions.

The court finds that the alleged inaction of the Attorney General's Office, even if true, would not support a claim for statutory tolling U.S.C. § 2244(d)(1)(B). Essentially,

Petitioner claims that because of the alleged inaction, he relied on ICJR's advice in filing his habeas corpus petition.   However, a non-capital habeas petitioner is not entitled to the assistance of someone trained in the law. Lewis v. Casey, 518 U.S. at 356, 360.  The existence of ICJR and Petitioner's reliance on the organization did not prevent him from timely filing his petition, because he could have simply filed the petition himself.  Therefore, the Attorney General's Office alleged inaction in the face of complaints about ICJR did not constitute "state action" that would tolling the running of the statute of limitations.  Thus the court will decline to find statutory tolling in this instance, and will not approve discovery on the issue.

Petitioner seeks an evidentiary hearing or depositions "at which ICJR employees, Attorney General's Office employees, Petitioner, Denise Porter, and Fred Mott may testify." Petitioner claims that this testimony will support his claim that ICJR, along with a possibly complicit Attorney General's Office, caused the additional claims now raised to be untimely. Petitioner claims that this will justify tolling of the statute of limitations in regard to these claims.   As stated above, Petitioner's claims against ICJR and the Attorney General's Office, even if unsubstantiated, are insufficient to support tolling.  Thus, an evidentiary hearing or depositions on the topic are not justified.

Based on all of the above,  the court finds no basis for Petitioner's request to conduct discovery in this matter and the request will be denied.  Because no new material will be developed, Petitioner's request for expansion of the record will also be denied.

Petitioner also seeks appointment of an investigator and counsel in connection with his request to conduct discovery.  As explained above, any discovery on the topics suggested by Petitioner would be futile.  Accordingly, the court finds that appointment of an investigator or counsel in connection with such discovery is unwarranted.

//

Relation Back

In his first opposition to Respondent's motion to dismiss, Petitioner contends that his newly exhausted claims "relate back" to October 25, 2005, under <u>Anthony v. Cambra</u>, 236 F.3d 568, 576-78 (9th Cir. 2000) and rule 15(c), Federal Rules of Civil Procedure.  October 25, 2005, is the date that Petitioner both lodged his amended petition with the court and requested a stay.  Petitioner argues that because he lodged his amended petition on that date, the passage of time since then should not be counted against him.

Petitioner misunderstands the legal concept of "relation back," which allows a subsequent pleading to be considered as if it had been <u>filed</u> at the same time an earlier pleading was <u>filed.</u>  This has no application to documents which are merely lodged with the court.  More importantly, however, the statute of limitations for petitioner to file his habeas corpus petition in this case ran on April 15, 2004.  Thus, even if the court considered the amended petition to have been filed on October 25, 2005, it would have been untimely <u>at the time it was filed</u>. Thus, the passage of time since October 25, 2005, is meaningless as to the running of the statute of limitations, and Petitioner's claim that he is entitled to have the claims in his amended petition "relate back" is without merit.

Evidentiary Hearing/ Actual Innocence

Petitioner seeks an evidentiary hearing to present the testimony of himself, Angelique Williams and Kia Block.  He states that he argues in his petition that trial counsel was ineffective for failing to insure that Petitioner, Williams and Block testified so as to establish his alibi.  He contends that even if these claims are untimely under 28 U.S.C. § 2244(d), dismissal is not appropriate under the actual innocence analysis set forth in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).

In <u>Majoy v. Roe</u>, 296 F.3d 770 (9th Cir.2002), the Ninth Circuit remanded an untimely federal petition to the district court for the court to determine if the petitioner met

11

the possible actual innocence gateway for an untimely petition.  Id. at 776-77 & n.3.   Under

the actual innocence gateway of Schlup v. Delo, a petitioner's procedurally barred claim may

be considered on the merits if his claim of actual innocence is sufficient to implicate a

fundamental miscarriage of justice.   Majoy, 296 F.3d at 775-76; Carriger v. Stewart, 132

F.3d 463, 477 (9th Cir.1997) (en banc).   The petitioner must present evidence to show that in

light of all the evidence, including evidence not introduced at trial, it is more likely than not

that no reasonable juror would have convicted him.  Schlup, 513 U.S. at 327; Majoy, 296

F.3d at 776;  Sistrunk v. Aremenakis, 292 F.3d 669, 673, 677 (9th Cir.2002).  "A petitioner

need not show that he is 'actually innocent' of the crime he was convicted of committing;

instead, he must show that 'a court cannot have confidence in the outcome of the trial.'"

Majoy, 296 F.3d at 776 (quoting Schlup, 513 U.S. at 316 and Carriger, 132 F.3d at 478).

The Ninth Circuit has explained that claiming one should be allowed to pass through the

Schlup gateway is "not itself a constitutional claim, but instead a gateway through which a

habeas petitioner must pass to have his otherwise barred constitutional claim considered on

the merits."  Majoy, 296 F.3d at 778 n.1 (quoting Schlup, 513 U.S. at 315).  In Schlup, the

Supreme Court cautioned that to be credible, a claim of actual innocence requires the

"petitioner to support his allegations of constitutional error with new reliable evidence . . .

that was not presented at trial." Schlup, 513 U.S. at 324;  Majoy, 296 F.3d at 776.

In this case, Petitioner has attached three declarations to his second opposition to

Respondent's motion to dismiss.  The first declaration is by Petitioner himself.  In his

declaration, Petitioner claims that at the time the crimes occurred, he was staying in Los

Angeles at the home of his cousin, Angelique Williams.  Thus, he asserts, he could not have

committed the crimes for which he was convicted, which occurred in Bakersfield.  Petitioner

asserts that he alerted counsel to this alibi evidence, and that Petitioner did not testify and

present this information at trial because his codefendant threatened to harm Petitioner and his

family if he testified.  Petitioner's declaration is dated July 21, 2005.

The second declaration is by Petitioner's cousin, Angelique Williams.  She states that Petitioner was visiting her in Los Angeles on the date of the crimes, and that during the actual time the crimes occurred, Petitioner and Williams' cousin, Kia Block, were in Williams' apartment.  Williams states that she tried to contact Petitioner's attorney in May of 2000, near the time of Petitioner's trial, but that the attorney failed to respond to her messages.  Her declaration is dated August 15, 2005.

The third declaration is from Kia Block.  Ms. Block states that between 6:30 p.m. and 7:00 p.m. on December 21, 1999, she was with Petitioner in Angelique Williams' apartment. The declaration is dated June 30, 2005.

As Respondent argues, the present case is easily distinguished from <u>Majoy</u>, in which new evidence came to light in subsequent trials of Majoy's codefendants.  This included testimony from witnesses that they had lied in Majoy's trial, and changes in testimony which had previously implicated him.  In the present case, Petitioner has simply provided his own self-serving declaration, corroborated by declarations from his cousin and his cousin's cousin.  These declarations are dated some five years after Petitioner's conviction.  They were not presented to any court until attached to Petitioner's second opposition to Respondent's motion to dismiss.

As set forth above, in order to be credible, a claim of actual innocence requires the "petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324.  The court finds the declarations offered by Petitioner to be rather low in terms of reliability, both because of their tardy presentation and because the declarants, consisting of Petitioner and his family members, are hardly disinterested witnesses.

More importantly, however, the court finds that Petitioner has failed to meet his burden of showing that in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have convicted him.  <u>Schlup</u>, 513

13

U.S. at 327.   As Respondent argues, there was ample circumstantial and direct evidence to support the verdict that Petitioner is guilty of the charged crimes.  One eyewitness, Tarrah Barnard, attended high school with Petitioner and picked his photograph from a lineup as one of the men she saw looking into the vehicle that was the object of the carjacking. Petitioner's fingerprints were found on the carjacked vehicle.  A hotel clerk identified Petitioner as the person who arrived at the hotel in the carjacked vehicle several hours after the crime and registered for a room, providing his driver's license as identification.  Finally, there was the evidence of Petitioner's confession to police, in which he admitted he participated in the carjacking and kidnaping, admitted he held a shotgun to the victim's head, and acknowledged he ran from the police when he was stopped in Los Angeles.  In light of all this evidence, the court cannot find that had the jury also been presented with the three declarations which Petitioner now offers, it is more likely than not that no reasonable juror would have convicted him.  Accordingly, this court concludes Petitioner's claim of actual innocense does not implicate a fundamental miscarriage of justice and that this case does not come within the narrow category of cases which pass through the <u>Schupp</u> actual innocence gateway.

Based on all of the above, the court will grant Respondent's motion to dismiss the new claims presented for the first time in Petitioner's amended petition on the ground that they are barred by the statute of limitations.

### The Original Claims

Remaining are the three claims from Petitioner's original petition, which are restated as claims one, two and seven of the amended petition.   Respondent filed an answer to the original petition on February 8, 2004, opposing each of the claims.

Admission of Petitioner's Confession

Petitioner contends that the trial court's admission of his confession to police violated

14

his rights under the Fifth and Fourteenth Amendments to the Constitution.  Specifically,

Petitioner contends that his statements to Detective Ramsey were rendered involuntary by

Ramsey's continued questioning and pressuring of Petitioner to talk after Petitioner's

invocation of the right to remain silent and requests for assistance of counsel.

On May 16, 2000, trial counsel filed a motion objecting to admission into evidence of

Petitioner's alleged confession to Police Detective Ramsey following his December 25,

1999, surrender to police and arrest.  The motion was opposed by the prosecutor.  After

hearing testimony from the arresting detective and Petitioner, the court denied the motion to

suppress.

In the unpublished memorandum opinion issued on October 11, 2002, ruling on

Petitioner's direct appeal, the Court of Appeal held as follows:

> The trial court did not err in admitting Porter's statements made during the custodial
> interview in Bakersfield.  Porter's initial response to *Miranda* advisements could not
> have been more ambiguous - - he said his parents did not want him to give a
> statement and that he did not know what to do.  (See *People v. Box, supra,* 23 Cal.4th
> at p. 1195 [defendant's statement to police that attorney told him not to speak with
> anyone was ambiguous]; *People v. Wash* (1993) 6 Cal.4th 215, 238-239 ["I don't
> know if I wanna talk anymore' is ambiguous]; *People v. Tyson* (1988) 197
> Cal.App.3d 1275, 1281 [statement that mother wanted defendant to have attorney is
> not invocation of right to counsel].)
>
>  Porter's uncertainty permitted the police to "continue talking to him for the
> limited purpose of clarifying whether he is waiving or invoking those rights."
> (*People v. Wash, supra,* 6 Cal.4th at pp. 238-239 [defendant who states he does not
> know if he wants to talk to police may be questioned further to clarify intention];
> *People v. Johnson* (1993) 6 Cal.4th 1, 27 [same]; *Davis v. United States* (1994) 512
> U.S. 452, 461 [police may seek to clarify suspect's ambiguous reference to counsel].)
> This is precisely what the evidence shows Ramsy did; he attempted to get Porter to
> decide about whether to talk or remain silent by telling Porter that he was 18 and thus
> old enough to make a decision.  (See *People v. Wash, supra,* 6 Cal.4th at p. 239.)
> Nothing was said by Ramsey about the case other than that Brookins had named
> Porter as the second suspect, and Ramsey declined to answer Porter's question about
> the further contents of Brookins' statement.  Not all conversation between a
> defendant and the police is an interrogation.  (See *Rhode Island v. Innis* (1980) 446
> U.S. 291, 302 [interrogation consists of words or actions on the part of the police that
> they should know are "reasonably likely to elicit an incriminating response"].)
>
>  We reject Porter's claim that Ramsey sought to "soften Porter up" by
> confronting him with information that Brookins had already given a statement
> implicating Porter for the same reasons we rejected Brookins similar contention
> concerning the ATM pictures.  As we noted, Ramsey told Porter the police had

15

spoken to Brookins and knew Porter was the second suspect in the case, and Ramsey refused further discussion concerning what Brookins had said.  From this information, Porter obviously understood he was a serious suspect for a serious crime and was thus in a position to evaluate accurately his position and decide if he wanted to speak with Ramsey or instead claim his *Miranda* privileges.  It is not improper for police to inform a suspect of the seriousness of the charges and to confront the suspect with the evidence in the hands of the police so long as the police do not cajole or trick a defendant to make a statement in connection with the information given.  (See *People v. Sunday, supra,* 275 Cal.App.2d at p. 480; *U.S. v. Moreno-Flores, supra,* 33 F.3d 1164; *U.S. v. Pheaster, supra,* 544 F.2d 353; and *U.S. v. Payne, supra,* 954 F.2d at p. 202.)  Nothing in Ramsey's conduct comes close to constituting an illegal strategem.

Finally, admission of Porter's statements was not prejudicial because there was unrebutted, convincing evidence of Porter's guilt.  For example, a witness near the kidnaping scene in Bakersfield identified Porter as being in the area because she recognized him as a high school classmate, the witness picked him out of a photo lineup, a Los Angeles motel clerk identified Porter in a photo lineup as one who had taken a room later on the day on [sic] the incident, the motel registration card was in Porter's name, identified the victim's car, and had a copy of Porter's driver's license attached, and Porter's fingerprints were found on both the inside and the outside of the vehicle.  It is pure fantasy to posit, as Porter does, that, in the absence of Porter's statement, any rational juror would likely have found an innocent explanation for evidence which linked Porter to the interior and exterior of the victim's car - - a car he  was not shown to have had any prior earthly interest in - - at two locations - - one of which was the crime scene - - at least a hundred miles apart on the same day the crime was committed.

Under Miranda, a person in custody must be informed before interrogation that he has a right to remain silent and to have a lawyer present.  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).  "[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation."  Alvarez v. Gomez, 185 F.3d 995, 997 (9th Cir. 1999) (citations omitted).  Whether a suspect has invoked his right to counsel is an objective inquiry.  Davis v. United States, 512 U.S. 452, 458-459, 114 S.Ct. 2350 (1994).  "Invocation of the Miranda right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an  expression of a desire for the assistance of an attorney."  Id., 512 U.S. at 459 (citing McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209.  "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to

16

counsel, our precedents do not require the cessation of questioning." Id. Rather, the suspect must unambiguously request counsel. Id.

As stated above, in analyzing a Section 2254 habeas corpus petition, this court must presume that the state court's factual determinations are correct, and must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The court finds that Petitioner has not presented such evidence in regard to this claim. Thus, the court accepts the description of the facts set forth by the Court of Appeal. The court finds that under these facts, Petitioner's references to wanting to remain silent were ambiguous and that no Constitutional violation occurred when the officer questioned him further. Thus, the court concludes that Petitioner has failed to carry his burden of demonstrating that the California Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). Accordingly, the court finds that this claims presents no basis for habeas corpus relief.

Admission of Co-Defendant's Redacted Confession

Petitioner contends that admission of the redacted confession of his co-defendant Brookins, over Petitioner's objection, violated his rights under the Sixth and Fourteenth Amendments. Respondent disputes this contention.

In addressing this contention, the Court of Appeal held as follows:

> The admission of Brookin's redacted confession was not error. As Porter tacitly admits, Brookin's statement was modified to delete all reference to anyone other than Brookins. The jury was instructed to consider the confession only as to Brookins. The Sixth Amendment right to confrontation is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction, where the confession is redacted to eliminate any explicit reference, by

name or obvious substitution, to anyone other than the codefendant.  (See *Richardson v. Marsh* (1987) 482 U.S. 200, 208; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1045 [if all references to nondeclarant defendant are deleted, extrajudicial statement may be admitted]; *People v. Archer* (2000) 82 Cal.App.4th 1380, 1386 [same]; *People v. Hampton* (1999) 73 Cal.App.4th 710, 720 [same].)

Porter's position is that, even though the redacted confession by Brookins did not directly implicate Porter, it was inadmissible nonetheless because the alterations themselves raised certain factual questions which could have led the jury to implicate Porter in the crime simply because of his presence in the courtroom as a codefendant. It is difficult to understand how, under this theory, any confession, whether or not it might require redaction - - or any prosecution evidence for that matter - - would ever be admissible in a multi-defendant trial where the prosecution's proof showed multiple perpetrators except in the exceptionally rare - - probably nonexistent - - instance where the confession or the other proof is so factually complete and logically consistent as to be unassailable.  The mere presence of several accused in the courtroom will always suggest that all were perpetrators, and any factual discrepancy in the prosecution's proof with respect to one accused, whether or not raised by a confession of that accused, can lead the jury to look to another accused for the explanation.  (See *People v. Bryden* (1998) 63 Cal.App.4th 159, 176.)

Moreover, a properly redacted confession of one defendant is admissible even though another codefendant may be implicated in the crime by reference to other evidence presented at trial.  (See *Richardson v. Marsh, supra*, 481 U.S. at p. 208; *Gray v. Maryland* (1998) 523 U.S. 185, 192; *People v. Archer, supra*, 82 Cal.App.4th at p. 1386; *People v. Bryden, supra*, 63 Cal.App.4th at p. 176 [no Sixth Amendment violation when, in order to implicate defendant, extrajudicial statement must be linked to other evidence].) [Footnote omitted.] If the existence of independent evidence which may connect a codefendant to a crime described in a confession will not render the confession inadmissible, it is difficult to conceive how the lack of such evidence will render the evidence equally inadmissible.

Last, any error in admitting the redacted statements was unquestionably harmless to Porter in light of the evidence, exclusive of his confession, described above, which identified him as a perpetrator.  (See *People v. Ervin* (2000) 22 Cal.4th 48, 88 [error is harmless where there is other substantial incriminating evidence].)

Petitioner has provided nothing to show that this analysis of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  Specifically, Petitioner does not show any error in the analysis that the present case is analogous to Richardson v. Marsh, in which a codefendant's confession was found admissible where it redacted to eliminate all references to the defendant and a limiting instruction was given.  Accordingly, the court finds that Petitioner has failed to carry his burden and that this claim provides no basis for habeas corpus relief.

18

1

2    <u>Sufficiency of the Evidence Re Penal Code Section 209(a) Enhancement Allegation</u>

3
         Petitioner contends that there was insufficient evidence presented at trial to support
4
the jury's finding on count one that the victim suffered bodily injury and was exposed to
5
substantial likelihood of death. Respondent disputes this contention.
6
7         In ruling on this issue, the Court of Appeal held as follows:

8              There was sufficient evidence to support a finding that the victim suffered
         bodily harm. [Footnote omitted.] The bodily harm element of Penal Code section 209,
9         subdivision (a), is established by proof of "1) a substantial or serious injury to the
         body of the kidnapped victim, 2) by application of a physical force, 3) beyond that
10        necessarily involved in the forcible kidnapping. [Citations.]" (*People v. Schoenfeld*
         (1980) 111 Cal.App.3d 671, 685.)   Whether or not there has been bodily harm is a
11        factual determination subject to review under the familiar substantial evidence test.
         (*People v. Chacon* (1995) 37 Cal.App.4th 52, 60; *People v. Rayford* (1994) 9 Cal.4th
12        1, 23 [appellate court must evaluate entire record in the light most favorable to
         respondent and presume in support of the judgment every fact a jury could have
13        reasonably deduced from the evidence].)

14             Here, the victim testified she suffered a severe bruise to her left buttock which
         was painful for a week and also suffered a substantial abrasion to her elbow which
15        left a three-inch circular scar.   The jury obviously concluded these injuries were
         substantial, and, though a close question, we think the evidence justifies this finding.
16        Severe abrasions which leave scars, and bruises which inflict considerable pain, are
         more than superficial skin injuries and have been found to be serious and substantial.
17        (See *People v. Chacon, supra*, 37 Cal.App.4th at p. 60 -61 [victim suffered severe
         contusions to his back, chest and legs]; *People v. Brown* (1947) 29 Cal.2d 555, 558
18        [blow to chin, which remained bruised and discolored for several days]; see also *U.S.
         v. Phillips* (7th Cir. 2001) 239 F.3d 829, 847 - 848 [scar is permanent injury and
19        therefore *serious* injury under federal sentencing guidelines]; *U.S. v. Cree* (8th Cir.
         1998) 166 F.3d 1270, 1271 [same].)

20             Appellant's argument that the injuries suffered were not inflicted by their acts
         but rather by the victim's independent decision to jump from the moving car is
21        ridiculous.  Appellants' kidnapping of the victim, the threats that they would "blow
         [the victim's] brains out," and the repeated exhibition of their weapons to show her
22        they were serious, could not have led the victim, or any other rational person for that
         matter, to any conclusion other than attempt to escape or likely suffer grave injury.
23        For this reason, this case is governed by *People v. Monk* (1961) 56 Cal.2d 288
         [because victim confined in moving vehicle was threatened with violence and sexual
24        assault, injuries suffered when she threw herself out of vehicle were caused by
         defendant] and not *People v. Baker* (1964) 231 Cal.App.2d 301 [when victim
25        confined in back of truck, told he would be released, and was not threatened, injuries
         suffered when jumped out of vehicle found not caused by defendant].

26

27

28                                            19

1   The law on insufficiency of the evidence claim is clearly established.  The United

2   States Supreme Court has held that when reviewing an insufficiency of the evidence claim on

3   habeas, a federal court must determine whether, viewing the evidence and the inferences to

4   be drawn from it in the light most favorable to the prosecution, any rational trier of fact could

5   find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443

6   U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.

7   Id. at 324 n. 16.

8   As stated above, in analyzing a Section 2254 habeas corpus petition, this court must

9   presume that the state court's factual determinations are correct, and must accept all factual

10  findings made by the state court unless the petitioner can rebut "the presumption of

11  correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The court finds that

12  Petitioner has not presented such evidence in this case.  The court further finds that under the

13  facts set forth by the Court of Appeal, a rational trier could find the required elements of

14  Penal Code Section 209(a).  Accordingly, this court finds no merit to Petitioner's claim of

15  insufficient evidence to support a finding that the victim suffered bodily harm under Penal

16  Code Section 209(a).  Thus, the court concludes that Petitioner has failed to carry his burden

17  of demonstrating that the California Supreme Court's adjudication of the claim "resulted in a

18  decision that was based on an unreasonable determination of the facts in light of the evidence

19  presented in the State Court proceeding." 28 U.S.C. § 2254(d).  Accordingly, the court finds

20  that this claims presents no basis for habeas corpus relief.

### Certificate of Appealability

Petitioner may seek a certificate of appealability in regard to this memorandum

opinion and order. The controlling statute, 28 U.S.C. § 2253, provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
> (b) There shall be no right of appeal from a final order in a proceeding to test the

validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In the present case, the court finds that Petitioner cannot carry his burden of making a substantial showing of the denial of a constitutional right.  Accordingly, the court finds that Petitioner cannot make the showing necessary for a certificate of appealability and such a certificate will be denied.

**ORDER**

Based on the above, IT IS HEREBY ORDERED as follows:

1)    Respondent's motion to dismiss claims three through six and eight through ten of the amended petition, the new claims, on the ground that the claims are untimely in violation of 28 U.S.C. Section 2244(d) is GRANTED [Doc. 60];

2)    Petitioner's motion for discovery, deposition, evidentiary hearings, appointment of counsel and appointment of an investigator is DENIED [Doc. 72];

3)    The petition for writ of habeas corpus is DENIED as to claims one, two and seven of the amended petition; and

21

4)      The Clerk of the Court is directed to ENTER judgment for Respondent and to
        CLOSE this case.

IT IS SO ORDERED.

**Dated:     September 11, 2007**          **/s/  William M. Wunderlich**
                                        UNITED STATES MAGISTRATE JUDGE

22